Rachel E. Kaufman (CSB# 259353)
rachel@kaufmanpa.com
KAUFMAN P.A.
237 S Dixie Hwy, 4th Floor
Coral Gables, Florida 33133
Telephone: (305) 469-5881

*Attorney for Plaintiff and the Proposed Classes*

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW LOCKHART, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>GUITAR CENTER STORES, INC., a Delaware corporation,<br><br>*Defendant.* | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Andrew Lockhart ("Plaintiff" or "Plaintiff Lockhart") brings this Class Action Complaint and Demand for Jury Trial against Defendant Guitar Center Stores, Inc. ("Defendant" or "Guitar Center"), to stop the Defendant from violating the Telephone Consumer Protection Act ("TCPA") by making unsolicited pre-recorded voice calls and other calls to consumers who registered their phone numbers with the National Do Not Call Registry ("DNC"), and to otherwise obtain

injunctive and monetary relief for all persons injured by Defendant's actions. Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## PARTIES

1.    Plaintiff Lockhart is a Cavalier, North Dakota resident.

2.    Defendant Guitar Center is a Delaware corporation headquartered in Westlake Village, California. Guitar Center conducts business throughout this District, California, and the United States.

## JURISDICTION AND VENUE

3.    This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4.    This Court has personal jurisdiction over Defendant and venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant resides in this District and conducts business in California, including in this District, and the wrongful conduct leading to this case was directed by Defendant to the Plaintiff from this District.

**INTRODUCTION**

5.     As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6.     The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers.  *See* 47 C.F.R. § 64.1200(c)(2).

7.     A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

8.     When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

9.     By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

10.     The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

11.     Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

12.     According to online robocall tracking service "YouMail," 3.9 billion robocalls were placed in January 2022 alone, at a rate of 126.3 million calls per day. www.robocallindex.com. (Last checked February 28, 2022).

13.     The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

14.     "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

15.     "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone*

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls

*Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

16.    Defendant Guitar Center sells musical instruments and related equipment to consumers throughout the U.S.

17.    Defendant Guitar Center makes telemarketing calls to consumers to solicit their purchase of its products.

18.    These calls include pre-recorded voice calls to consumers who have never consented to receive phone calls from the Defendant.

19.    They also include calls to consumers whose numbers are registered with the DNC, who have never provided their phone number to Defendant, and who never consented to receive phone calls from the Defendant.

20.    For example, Plaintiff Lockhart received multiple calls from Guitar Center despite never having given his express written consent to receive telemarketing calls from the Defendant, despite having his phone number registered on the DNC to prevent such cold calls, and despite making clear requests to the Defendant to stop the calls to his cell phone.

---

[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf

21.    Many consumers have also posted complaints online regarding the unsolicited telemarketing calls they have received from Defendant Guitar Center using the same phone number that Defendant Guitar Center used to call Plaintiff Lockhart, 815-825-4661:



Feb 21, 2020

Sorry if there is already a discussion.

Guitar center just called me out of the blue to ask me what kind of music I am playing, and to let me know they had some great contacts in their office. I cannot remember the last time I went to guitar center, but it has probably been about 3 years.

Is anyone else getting calls? I am surprised they took the sweetwater approach since it doesn't seem too popular. [5]

Cold calling has been part of guitar center's policy for over 20 years. Each employee is supposed to make so many calls a day (they call it getting an up). [6]

22.   Defendant   Guitar   Center   hires   employees   to   place   outbound telemarketing calls or cold calls to consumers to solicit their products to consumers. Here are some Guitar Center job posts which mention cold calling as part of the employee's responsibilities, for instance:

- Advertisement for hiring "Bilingual Telephone Sales – Work From Home": [7]

  **Responsibilities will include, but will not be limited to the following:**
  * Manage all aspects of customer accounts through multiple contact channels
  * Perform Outbound calling and other revenue generating activities to increase existing revenue and develop
  new revenue
  * Handle inbound sales requests and establish those customers into your revenue stream
  * Manage your book of business accounting for key KPIs including but not limited to net sales, margin %,
  call counts, and warranty coverage sales
  * Grow your customer database and build revenue
  * Offer exceptional service taking advantage of all sales avenues to achieve and exceed goals.

- Advertisement for hiring "Gear Advisor": [8]

---

[5] https://www.thegearpage.net/board/index.php?threads/guitar-center-just-sweetwaterd-me.2123886/#post-30049004
[6] https://www.thegearpage.net/board/index.php?threads/guitar-center-just-sweetwaterd-me.2123886/page-4
[7] https://recruiting.adp.com/srccar/public/RTI.home?c=1156951&d=ExternalCareerSiteCC#/
[8] *Id.*

Do you love music and have a passion for sales and business development? Do you have a natural inclination to put your customers first and support their needs? Gear Advisors are empowered and responsible for managing all facets of the customer experience through all contact channels chat/email/inbound and outbound phone calls. He/she will be responsible for establishing, servicing, and maintaining a customer base in a fast paced and fun environment. The Gear Advisor is the "face" of our business and expected to provide our customers with the best buying experience possible. Evening and weekend shifts available

Responsibilities will include, but will not be limited to the following:

* Manage all aspects of customer accounts through multiple contact channels
* Perform Outbound calling and other revenue generating activities to increase existing revenue and develop new revenue
* Handle inbound sales requests and establish those customers into your revenue stream

- Advertisement for hiring "Lesson Advisor": [9]

    **Responsibilities will include, but will not be limited to the following:**
    - Execute student retention and acquisition strategies that drive sales and promotional programs necessary for business growth
    - Provide a best in class program and customer service experience that aligns with the business vision and strategy
    - Implement a consultative approach for sign-up/scheduling services to maximize customer satisfaction and increase business performance.
    - Conduct intentional outbound call campaigns to engage prospective students, enrolled students, and customers
    - Effectively communicate the program and company's value proposition
    - Troubleshoot and resolve customer impacting issues to include lessons programs services, scheduling, instructors, policy and procedure, account status, marketing promotions/campaigns, and billing
    - Adhere to program quality standards in all interactions
    - Meet performance and sales goals set by management

[9] https://recruiting.adp.com/srccar/public/RTI.home?c=1156951&d=ExternalCareerSiteCC#/

CLASS ACTION COMPLAINT
-8-

23.     Some of Guitar Center's employees have posted reviews regarding their training and direction to cold call consumers:

**Cons**

-You're forced to push extended warranties onto customers by management, if you aren't successful with it you'll have "talks" about it every month or so. Was even told I would written up and could face termination for not "doing my job"

- Sales associates are expected to stay passed their shifts to close, (associates that are excluded are pro audio sales staff and any female staff), this was detrimental to your sales per hour as you'd work an extra hour where you cannot sell anything

-You are not treated equally by management. Sales associates with higher numbers are given a special treatment.

-Absolutely no room for growth within the company if the store manager doesn't like you.

-Forced to cold call customers.

-Type of job where you have to lie to customers in order to push sales or avoid conflict.

-Very disorganized and messy work environment.

-Always understaffed.

-Never praised for your accomplishments but anytime you mess up you'll most definitely hear about it. [10]

## Job not a career

Expert Drum Sales Associate (Former Employee) - Murrieta, CA - February 18, 2018

Typical day in the drum department would be getting cash drawer ready, people coming in immediately when store opened but not to buy anything, just destroy inventory and drums all day. Phone calls were difficult with all the noise, had to cold call past customers to try and get them to buy things. Commission was an unfair scale. You had to "fade" or pay off your hours before you could start earning commission. Difficult task to meet when a majority of the foot traffic was unaware of how expensive drumming can be. Workplace culture was good, everyone got along well. Every department and assistant manager was good except for the store manager. Hardest part of the job was trying to make sales and dealing with the constant noise. Most enjoyable part was being around music all day and the discount [11]

---

**Okay if you're used to working at a call center and selling stuff/easy job**

Bilingual Sales Representative (Current Employee) - Indianapolis, IN - June 12, 2017

Inbound sales calls during the day. updated office and break room. day consists mostly of sales and customer service calls. Team leads are mostly never around to help with calls.

Was this review helpful?

Yes 1    No                                          Report      Share

✓ **Official response from Guitar Center**
June 16, 2017

Thanks for the review -- our Contact Centers are an integral part of our operation! Our most talented "ninja" sales agents also make outbound calls. Talk to you manager to learn more if you'd like a growth opportunity.

12

**OK at best**

Sales Associate (Former Employee) - Sherman Oaks, CA - November 30, 2021

A typical day working on the sales floor at GC is chasing leads, making/taking calls, working with customers in-store, tackling store projects, and making sales. Learned a lot about working in a sales environment and learned a lot about equipment. Management was helpful most of the time but occasionally would be problematic. Workplace culture was acceptable but could've been better. Some coworkers were just god-awful to work with. The hardest part of the job was working with unreasonable customers/coworkers and the threat of getting let go if you have a bad sales month. Not sure if that's still the case. The best part was getting employee discounts on gear and networking with other musicians, producers, engineers, etc.

13

24.     In response to these unsolicited calls, Plaintiff Lockhart files this lawsuit seeking monetary and injunctive relief requiring the Defendant to cease from violating the Telephone Consumer Protection Act, as well as an award of statutory damages to the members of the Classes and costs.

---

12 https://www.indeed.com/cmp/Guitar-Center/reviews?fcountry=ALL&sort=rating_asc
13 https://www.indeed.com/cmp/Guitar-Center/reviews?fcountry=ALL&fjobcat=sales&start=140&sort=rating_asc

CLASS ACTION COMPLAINT
-10-

## PLAINTIFF LOCKHART'S ALLEGATIONS

25.    Plaintiff Lockhart's cellular phone number ending xxx-xxx-9222, is registered on the DNC since November 20, 2021.

26.    Plaintiff Lockhart uses his phone number for personal use only. It is not associated with a business.

27.    Since July 2021, Plaintiff Lockhart has been receiving unwanted solicitation calls to his cell phone from Defendant Guitar Center using the phone number 815-825-4661 marketing Defendant's products to the Plaintiff.

28.    On July 17, 2021, at 1:53 PM, Plaintiff Lockhart received a call to his cell phone from Defendant Guitar Center using the phone number 815-825-4661. Plaintiff answered the call and told the Defendant's employee to stop calling his cell phone.

29.    On December 19, 2021, at 6:20 PM, Plaintiff Lockhart received a call to his cell phone from Defendant Guitar Center using the phone number 815-825-4661. Plaintiff did not answer this call and Defendant Guitar Center left the following pre-recorded voicemail to the Plaintiff's cell phone, offering help to the Plaintiff to purchase Defendant's products:

> "Hello there, this is Patrick here with Guitar Center, your online gear advisor. Just calling to get anything on a current year list that I could help you out with. We've got some really good coupons that we're currently running. So if you've got anything that's on the list it's a great to buy. Give me a call. My

number's 844-992-3728. 844-992-3728. My extension is 3137. 3137. I look forward to the call. Bye for now."



30.     On December 30, 2021, at 10:40 AM, Plaintiff Lockhart received another call to his cell phone from Defendant Guitar Center using the phone number 815-825-4661. Plaintiff did not answer this call.



31.     On February 3, 2022, at 11:20 AM, Plaintiff received a call to his phone from the Defendant using the phone number 815-825-4661. Plaintiff did not answer this call.



32.     The caller ID on Plaintiff's cell phone identified the phone number as Guitar Center.

33.     Plaintiff Lockhart never consented to receiving solicitation calls from Defendant Guitar Center and did not have an existing business relationship with the Defendant.

34.     The unauthorized telephone calls placed by Defendant, as alleged herein, have harmed Plaintiff Lockhart in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of his phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

35.     Seeking redress for these injuries, Plaintiff Lockhart, on behalf of himself and Classes of similarly situated individuals, bring suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq., which prohibits unsolicited prerecorded calls to cell phone numbers and other telemarketing calls to phone numbers that are registered on the DNC.

## CLASS ACTION ALLEGATIONS

36.     Plaintiff Lockhart brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seek certification of the following Classes:

**Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through trial (1) Defendant, or an agent calling on behalf of Defendant, called more than one time, (2) within any 12-

month period, (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant called Plaintiff.

**Pre-recorded No Consent Class:** All persons in the United States who from four years prior to the filing of this action through trial (1) Defendant (or an agent on Defendant's behalf) called on their cellular telephone number (2) using a pre-recorded voice message, (3) for substantially the same reason Defendant called Plaintiff.

37.     The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, their subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant has been fully and finally adjudicated and/or released. Plaintiff Lockhart anticipates the need to amend the Class definitions following appropriate discovery.

38.     **Typicality and Numerosity**: Plaintiff is a member of the Classes, and on information and belief, there are hundreds, if not thousands of members of the Classes, all of which received calls from Defendant as part of a single telemarketing campaign, and joinder of all members is impracticable.

39.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

     (a)     Whether Defendant's conduct violated the TCPA;

     (b)     Whether the Defendant or an agent calling on behalf of Defendant placed multiple calls within a 12-month period to Plaintiff and other consumers whose telephone numbers were registered with the DNC for at least 30 days at the time of each call;

     (c)     whether the Defendant or an agent calling on behalf of the Defendant placed calls using pre-recorded voice messages to the Plaintiff and other consumers without first obtaining their express written consent to place such calls;

     (d)     whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

40.     **Adequate Representation**: Plaintiff Lockhart will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff Lockhart has no interests antagonistic to those of the Classes, and Defendant has no defenses unique to

Plaintiff. Plaintiff Lockhart and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff Lockhart nor his counsel have any interest adverse to the Classes.

41.    **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Classes as a whole, and thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as a whole, not on facts or law applicable only to Plaintiff Lockhart. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Lockhart and the Do Not Call Registry Class)**

42.     Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

43.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

44.     Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.  47 U.S.C. § 227(c).

45.     Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Lockhart and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of

persons who do not wish to receive telephone solicitations that is maintained by the federal government.

46.     Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff Lockhart and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

47.     As a result of Defendant's conduct as alleged herein, Plaintiff Lockhart and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for each of such violations of 47 C.F.R. § 64.1200.

48.     To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**SECOND CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Lockhart and the Pre-recorded No Consent Class)**

49.     Plaintiff repeats and realleges paragraphs 1 through 41 of this Complaint and incorporates them by reference herein.

50.    Defendant, or an agent calling on behalf of the Defendant, placed unwanted solicitation telephone calls to Plaintiff Lockhart and the other members of the Pre-recorded No Consent Class using a pre-recorded voice message.

51.    These pre-recorded voice calls were made *en masse* without the prior express written consent of Plaintiff Lockhart and the other members of the Pre-recorded No Consent Class.

52.    Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff Duverger and the other members of the Pre-recorded No Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation, as well as injunctive relief.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Lockhart individually and on behalf of the Classes, prays for the following relief:

a)  An order certifying this case as a class action on behalf of the Classes, as defined above; appointing Plaintiff Lockhart as the representative of the Classes; and appointing his attorneys as Class Counsel;

b)  An award of damages and costs;

c)  An order declaring that Defendant's actions, as set out above, violate the TCPA;

d)  An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Classes; and

e)  Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Lockhart requests a jury trial.

Respectfully Submitted,

**ANDREW LOCKHART**, individually and on behalf of those similarly situated individuals

DATED this 6th day of April, 2022.

By: /s/ *Rachel E. Kaufman*
Rachel Elizabeth Kaufman
Kaufman P.A.
237 S Dixie Hwy, 4th Floor
Coral Gables, FL 33133
(305) 469-5881
Email: Rachel@kaufmanpa.com

*Attorney for Plaintiff and the putative Classes*